IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-00001-CNS

PABLO JAVIER CONCHA-GONZALES,

    Petitioner,

v.

KRISTI NOEM, Secretary, U.S. Department of Homeland Security,
TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement (ICE),
PAM BONDI, U.S. Attorney General,

    Respondents.

## ORDER

Before the Court is Petitioner Pablo Javier Concha-Gonzalez's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 And Request For Declaratory And Injunctive Relief. ECF No. 1. Respondents filed a response opposing Petitioner's requested relief. ECF No. 7. As Petitioner's challenge is fundamentally legal in nature, the Court declines to hold a hearing, *see* 28 U.S.C. § 2243, and, for the reasons outlined below, the Court GRANTS the petition and orders that Respondents provide Petitioner with a bond hearing at which Respondents will bear the burden of proof within five days of this order. In doing so, the Court presumes familiarity with the parties' briefing. *See* ECF Nos. 1, 7, 8.

## I.    BACKGROUND

This case once again presents a factual background and legal posture similar to many cases recently considered by this Court. Petitioner is a native and citizen of Cuba, ECF No. 7-1 (Quinones Decl.) ¶ 4, and arrived in the United States on March 19, 2022, *id.* ¶ 5. The same day, United States Customs and Border Patrol (CBP) issued a Notice to Appear (NTA) initiating Petitioner's removal proceedings pursuant to 8 U.S.C. § 1229a, *id.* ¶ 8. Petitioner claimed fear of persecution or torture if returned to Cuba. *Id.* ¶ 7. Although CBP could have detained Petitioner based on his arrival and presence at the border, it instead released Petitioner from custody on an order of recognizance, *id.* ¶ 9.

On May 8, 2023, Petitioner filed a Form I-485, Application to Register Permanent residence or Adjust Status with the United States Citizenship and Immigration Services (USCIS).[1] *Id.* ¶ 11. Petitioner's I-485 application for an adjustment of status is based on his eligibility under the Cuban Adjustment Act of 1966, Pub. L. No. 89-732, 80 Stat. 1161 (CAA), which allows natives or citizens of Cuba in the United States to apply for lawful permanent resident (LPR) status if they meet certain eligibility criteria.

---

[1] Respondents' response, as well as the declaration from Irma Quinones submitted in support of the response, appear to state that Petitioner filed two applications: the Form I-485 application filed on May 8, 2023 under the CAA, *id.* ¶ 11, and an earlier, unspecified "application [filed] with [USCIS]" on October 11, 2022, *id.* ¶ 10; *see also* ECF No. 7 at 4. Respondents explain that Petitioner's "I-485 application filed in 2022" was closed by USCIS on October 15, 2025 "based on [Petitioner's] pending removal proceedings." ECF No. 7 at 5 (citing ECF No. 7-1 ¶ 18). Petitioner's 2023 I-485 application is still pending before USCIS, *id.* at 4, though USCIS "has placed a hold on the adjudication of the [2023] application" as of the date of Petitioner's response. ECF No. 7-1 ¶ 26. Respondents offer no explanation or description of Petitioner's 2022 application, why it was closed, and why the 2023 application, by contrast, remains pending or was subsequently placed on hold.

Despite his pending I-485 application, on July 20, 2025, Immigrations and Customs Enforcement (ICE) issued a new NTA re-initiating Petitioner's removal.[2] *Id.* ¶ 17. The new NTA charges Petitioner with being inadmissible to the United States based on the same circumstances presented to CBP when Petitioner first encountered immigration officials in 2022. *Id.* ¶ 17.[3] On December 10, 2025, ICE arrested Petitioner in Florida and detained him pursuant to 8 U.S.C. § 1225(b), which requires Petitioner's mandatory civil immigration detention pending the resolution of his removal proceedings. *Id.* ¶¶ 19–20. On December 19, 2025, Petitioner filed a motion to dismiss his removal proceedings with the Executive Office for Immigration Review (EOIR), arguing that the immigration judge (IJ) should dismiss his removal proceedings to allow Petitioner to adjust his status under the CAA. *Id.* ¶ 21. The IJ denied Petitioner's motion based on a determination that he had failed to establish eligibility to apply for an adjustment of status under the CAA. *Id.* ¶ 23. Petitioner is currently detained at the ICE Denver Contract Detention Facility in Aurora, Colorado attendant to his pending removal proceedings. *Id.* ¶ 29. Petitioner's 2023 I-485 application for an adjustment of status under the CAA is also pending, but is currently placed on hold by USCIS for reasons Respondents fail to explain. *Id.* ¶ 26.

---

[2] Respondents note that prior to issuing Petitioner's second NTA, ICE determined that Petitioner's first NTA "was not filed with the [Executive Office for Immigration Review (EOIR)]." ECF No. 7 at 4 (citing ECF No. 7-1 ¶ 17). However, Respondents fail to explain the significance of that fact or how it impacted (or did not impact) Petitioner's status in the United States.

[3] The second NTA charges Petitioner with being inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (noncitizen present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated) and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (noncitizen who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document).

## II.   ANALYSIS

As noted above, several of the legal issues presented here have been recently litigated before and decided by this Court, as well as many other courts across the country. These cases concern noncitizens like Petitioner who, despite living in the United States for over two years, are held in mandatory immigration-related detention and denied bond hearings following the government's recent reinterpretation of 8 U.S.C. §§ 1225, 1226 of the Immigration and Nationality Act (INA). Many of these arguments, and in particular, Respondents' authority to detain Petitioner under 8 U.S.C. § 1225 pending the resolution of his removal proceedings, echo nearly identical arguments rejected by courts across the country and in this judicial district.[4] Before the Court can address the substance of Petitioner's application, however, it must determine whether there is merit to Respondents' argument that this Court lacks jurisdiction. There is not. Upon review of Respondents' arguments and cited authorities, the Court concludes the exercise of jurisdiction is proper.

---

[4] *Compare* ECF Nos. 1, 7 *and e.g.*, *Espinoza Ruiz v. Baltazar*, No. 1:25-cv-03642-CNS, 2025 WL 3294762 (D. Colo. Nov. 26, 2025); *Arauz v. Baltazar*, No. 1:25-cv-03260-CNS, 2025 WL 3041840 (D. Colo. Oct. 31, 2025); *Nava Hernandez v. Baltazar, et al.*, No. 1:25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025); *Hernandez Vazquez v. Baltasar, et al.*, No. 1:25-cv-3049-GPG, ECF No. 22 (D. Colo. Oct. 23, 2025); *Loa Caballero v. Baltasar, et al.*, No. 1:25-cv-3120-NYW, 2025 WL 2977650 (D. Colo. Oct. 22, 2025); *Moya Pineda v. Baltasar, et al.*, No. 1:25-cv-2955-GPG, ECF No. 21 (D. Colo. Oct. 20, 2025); *Mendoza Gutierrez v. Baltasar, et al.*, No. 1:25-cv-2720-RMR, 2025 WL 2962908 (D. Colo. Oct. 17, 2025); *Garcia Cortes v. Noem*, No. 1:25-cv-02677-CNS, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Carrillo Fernandez*, 2025 WL 3485800; *Garcia-Arauz v. Noem*, No. 2:25-cv-02117-RFB-EJY, 2025 WL 3470902 (D. Nev. Dec. 3, 2025); *Escobar Salgado v. Mattos*, No. 2:25-cv-01872-RFB-EJY, --- F. Supp. 3d ----, 2025 WL 3205356 (D. Nev. Nov. 17, 2025); *Ramos v. Rokosky*, No. 25cv15892 (EP), 2025 WL 3063588 (D.N.J. Nov. 3, 2025); *Godinez-Lopez v. Ladwig*, 2025 WL 3047889 (W.D. Tenn. Oct. 31, 2025); *Jimenez v. FCI Berlin, arden*, No. 25-CV-326-LM-AJ, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Romero v. Hyde*, Civil Action No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), 795 F.Supp.3d 475 (S.D.N.Y. Aug. 13, 2025).

### A. Jurisdiction

As a general matter, district courts are authorized to grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The individual in custody bears the burden of proving that his detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941). However, Respondents argue that the Court does not have jurisdiction to consider Petitioner's habeas application based on the jurisdiction-stripping provisions in 8 U.S.C. §§ 1252(b)(9), 1252(g) because "[Petitioner] cannot obtain review in this court of ICE's decision to commence removal proceedings against him." ECF No. 7 at 8 (citing *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016)). Although Respondents' articulation of the law is correct, it is wholly irrelevant.

Respondents' jurisdictional argument is based on the mistaken understanding that "Petitioner contends, in essence, that he should not be subject to removal proceedings while his application under CAA is pending[.]" *Id.* at 6. No good faith reading of Petitioner's habeas application supports this interpretation. Indeed, Petitioner makes abundantly clear the relief he seeks:

> Petitioner respectfully seeks *an order requiring his immediate release from custody*. In the alternative, Petitioner requests that this Court *order the immigration court to conduct a prompt and meaningful bond hearing* pursuant to 8 U.S.C. § 1226(a) and 8 C.F.R. §§ 1236.1(d), 1003.19, within seven (7) days, at which the Government must bear the burden of justifying continued detention by clear and convincing evidence, and the Immigration Judge must consider Petitioner's ability to pay and the availability of less restrictive alternatives to detention.

ECF No. 1 ¶ 3 (emphasis added). From this, it is obvious that Petitioner is challenging—and thus asking the Court to rule on—the legality of his *detention without a*

5

*bond hearing*, and not Respondents' decision to re-initiate his removal proceedings, as Petitioner notes, *see* ECF No. 8 at 2–3. That Petitioner's detention is incident to the renewed removal proceedings does not change his request. Nor does it transform Petitioner's application into a request for relief that this Court is barred from considering.

Despite using three full pages in support of their unavailing and inapplicable arguments, Respondents fail to acknowledge (or perhaps do not care to grapple with) the fact that this Court has already considered and rejected as "borderline frivolous" jurisdictional challenges based on one of the same statutory provisions raised by the same counsel of record in another recent immigration case before this Court. *See Nava Hernandez v. Baltazar*, No. 1:25-cv-03094-CNS, 2025 WL 2996643, at *2 (D. Colo. Oct. 24, 2025) (collecting cases) (rejecting as "borderline frivolous" Respondents' argument that § 1252(b)(9) poses a jurisdictional bar preventing the Court from considering a habeas petition "given that relevant Supreme Court precedent squarely supports the opposite conclusion"). The Court has likewise previously rejected similar arguments with respect to 8 U.S.C. § 1252(g), including when considered alongside 8 U.S.C. § 1252(b)(9). *See Garcia Cortes v. Noem*, No. 1:25-cv-02677-CNS, 2025 WL 2652880, at *1–2 (D. Colo. Sept. 16, 2025). The Court rejects Respondents' instant jurisdictional arguments—which identify no new facts or persuasive case law—for the reasons it previously articulated and adopts in full that reasoning here. *See id.* (holding that "§ 1252(g)'s narrow jurisdictional limitations" do not bar consideration of the noncitizen's claim that respondents "exceeded their statutory authority by detaining [the noncitizen] without the opportunity [to] seek release on bond") (collecting cases); *Nava Hernandez*,

2025 WL 2996643, at *2 (rejecting a jurisdictional challenge based on the "contention that Petitioner's challenge to his [civil immigration] detention 'aris[es] from . . . removal-related activity'") (collecting cases).[5]

### B. Petitioner's Request for Relief

Having dispensed with Respondents' futile jurisdictional arguments, the Court turns to the merits of Petitioner's habeas application. At bottom, Petitioner argues that because "DHS/USCIS regulations and longstanding agency policy" provide that the filing and pendency of an I-485 application "place[] [Petitioner] in a period of 'authorized stay' while [his] application is adjudicated[,]" "DHS lacks lawful authority to detain [Petitioner] absent individualized findings consistent with 8 U.S.C. § 1226(a) and due process, which DHS has not made here." ECF No. 1 ¶ 2. Respondents disagree and argue that because "Petitioner's pending application for adjustment of status under the CAA does not confer lawful status in the United States," Petitioner is "not lawfully present in the United States [and] is amenable to removal proceedings under 8 U.S.C. § 1229a." ECF No. 7 at 13. Respondents further contend that Petitioner is ineligible for a bond hearing under 8 U.S.C. § 1226(a) because, despite Petitioner's presence in the United States for over two years,

---

[5] Separately, the Court offers a word of caution: Respondents' counsel is (or should be) well aware of the Court's limited resources—indeed, the District of Colorado has already received over 40 immigration-related actions filed since the beginning of the year, many of which require prompt attention. These actions have a significant impact on the Court's docket, as it undoubtedly has on Respondents' office which is called upon to respond to such actions. Respondents' counsel should take heed that there is no benefit in re-litigating an argument that this Court has already rejected absent a change in controlling law, and there is certainly no positive correlation between the length of a brief and the likelihood that Respondents receive they outcome they seek. Respondents are thus cautioned to avoid raising meritless arguments with the Court—particularly when the most fundamental right to all, the right to be "[f]ree[] from imprisonment," is at stake. *Zadvydas v. Davis*, 533 U.S. 687, 690 (2001).

he is considered an "applicant for admission" under the INA and is thus properly subject to 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention requirement. *Id.* at 2, 16.

With respect to Respondents' first argument, the Court is not persuaded that a noncitizen filing a I-485 application under the CAA has not received authorization to remain in the United States. However, it is not clear that Petitioner's articulation of the law is entirely accurate either, at least when considering the limited authorities Petitioner cites. Indeed, although Respondents fail to raise this point, neither of the authorities that Petitioner cites—8 U.S.C. § 1255(a) and 8 C.F.R. § 245.2(a)(4)(ii)—explicitly state that "unlawful presence does not accrue during the pendency of an adjustment application" filed under the CAA, as Petitioner would have the Court believe. *See* ECF No. 1 ¶ 20. While 8 C.F.R. § 245.2 does contain several references to the CAA,[6] the specific subsection Petitioner identifies concerns the "[e]ffect of departure" from the United States by a noncitizen whose application for an adjustment of status is pending. *See* 8 C.F.R. § 245.2(a)(4)(ii). It does not state, as Petitioner contends, that USCIS has provided Petitioner with an "authorized stay" in the United States. *See* ECF No. 1 ¶¶ 20–21. And all 8 U.S.C. § 1255(a) describes is the process of applying for an adjustment of status. Despite this, a review of the Immigration Naturalization Act's (INA) structure, including the CAA; the limited case law or other authorities;[7] and Congress's intent in promulgating the same, support Petitioner's contention.

---

[6] Throughout 8 C.F.R. § 245.2, the Cuban Adjustment Act appears to be referred to as the "Act of November 2, 1966," rather than by name or statute.

[7] In fact, the Court is unable to find any cases that address facts similar to those presented here, and the parties' briefing did little to supplement its research. This dearth of case law is telling, however, in that it

"United States immigration law and policy afford special treatment to Cuban nationals who come to the United States." *United States v. Dominguez*, 661 F.3d 1051, 1067 (11th Cir. 2011). Indeed, the CAA was enacted explicitly "[t]o adjust the status of Cuban refugees to that of lawful permanent residents of the United States." *See* CAA, Pub. L. No. 89-732. "Under the CAA, an alien who is a native or citizen of Cuba can, in certain circumstances, apply to adjust her status to that of a lawful permanent resident." *Alonso v. U.S. Att'y Gen.*, 810 F. App'x 813, 814 (11th Cir. 2020) (citing CAA § 1). Specifically, the CAA provides that:

> [T]he status of any [noncitizen] who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least two years, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an [noncitizen] lawfully admitted for permanent residence if the [noncitizen] makes an application for such adjustment, and the [noncitizen] is eligible to receive an immigrant visa and is admissible to the United States for permanent residence.

CAA, Pub. L. No. 89-732, § 1. As the Eleventh Circuit has articulated, "[b]y taking advantage of the CAA, Cuban nationals, who have no documents authorizing their presence in the United States, *can remain in the United States* without demonstrating that they suffered persecution or proving refugee status." *Dominguez*, 661 F.3d at 1067 (emphasis added).

Moreover, it is significant that "(1) an application for adjustment of status cannot be filed by someone who is not physically present in the United States," *Alfaro Herrera v.*

---

supports the conclusion that, in the past, Respondents have rarely, if ever, decided to re-initiate removal proceedings against Cuban natives or citizens with pending I-458 applications under the CAA.

9

*Baltazar, et. al*, No. 1:25-cv-04014-CNS, 2026 WL 91470, at *7 (D. Colo. Jan. 13, 2026 (citing 8 U.S.C. § 1255(i); 8 C.F.R. § 245.1(a))); and (2) generally, "any submitted application is deemed abandoned and terminated if the applicant leaves the country, including, as is relevant here, if the applicant is removed via immigration proceedings," *id.* (citing 8 C.F.R. § 245.2(a)(4)(ii)(A)-(B)). Like the Court found in a recent analysis of the Special Immigrant Juvenile designation in the INA, both the design of the CAA and its interplay with other provisions of immigration law support the conclusion that because "Congress intended that Petitioner have an opportunity to pursue lawful permanent residence in the United States" as a Cuban national, pursuing Petitioner's removal before his I-485 application is adjudicated "summarily strip[s]" Petitioner of the benefits Congress intended that individuals like him receive. *Id.* (citing *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 163 (3d Cir. 2018)). Indeed, the First Circuit has acknowledged the same, stating that "where Congress has wanted to benefit [noncitizens] from certain countries," as it has with Cuban citizens and natives, "it has enacted special legislation which allows these individuals to enter the United States and apply for permanent resident status within one year, ***without being subjected to removal proceedings***." *See Succar v. Ashcroft*, 394 F.3d 8, 27 n.25 (1st Cir. 2005) (citing CAA, Pub.L. No. 89–732, 80 Stat. 1161) (emphasis added).

That being said, it is not clear based on the facts before the Court that Petitioner has actually been admitted or paroled in the United States, as is required for him to pursue an adjustment of status under the CAA. *See* CAA, Pub. L. No. 89-732, § 1 (limiting adjustment of status applications described in the CAA to "any [noncitizen] who is a native

or citizen of Cuba and who has been *inspected and admitted or paroled* into the United States subsequent to January 1, 1959" (emphasis added)); *see also Matter of Rodriguez*, 12 I. & N. Dec. 549 (R.C. 1967). Though Petitioner was initially released from immigration detention on his own recognizance in 2022, ECF No. 7-1 ¶ 9, Respondents contend that Petitioner has not been admitted or paroled into the United States, ECF No. 7 at 13. It is true that in certain circumstances, a noncitizen's release from detention on their own recognizance can constitute being paroled into the United States. *See Molina-Cantero v. Department of Homeland Security, et. al*, No. 2:25-cv-549-KCD-NPM, 2026 WL 83954, at *1 (M.D. Fla. Jan. 12, 2026) ("[Plaintiff] is a Cuban national who entered the United States without inspection. She was detained by immigration authorities and released days later with a document called an 'Order of Release on Recognizance.' In statutory terms, the Government classified this release as 'conditional parole' under 8 U.S.C. § 1226(a)."). This was also acknowledged in prior USCIS policies, which state that "[a]ny inspection and admission or parole, *regardless of the classification of admission or purpose of parole*, meets [the CAA's] requirement" that a noncitizen be inspected and admitted or paroled into the United States.[8] However, Petitioner neglected to include any details in his habeas application about his 2022 release or the basis on which that determination

---

[8] *See* USCIS Adjudicator's Field Manual (AFM), Ch. 23.11, Cuban Adjustment Act Cases, *available here* https://uscis.gov/sites/default/files/document/policy-manual-afm/afm23-external.pdf (emphasis added). The Court acknowledges that in 2020, USCIS began retiring the AFM and now instead uses the USCIS Policy Manual, which does not contain the same language. However, the language in the AFM is instructive, as it helps inform the Court of USCIS's own understanding of the CAA up until recently. *See W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 748 (2022) ("[C]ourts may examine [an] agency's past interpretations of the relevant statute," as "[a] 'contemporaneous' and long-held Executive Branch interpretation of a statute is entitled to some weight as evidence of the statute's original charge[.]" (Gorscuh, J., concurring) (citation omitted)).

was made. Accordingly, the Court cannot find, based on the limited facts before it, that Petitioner has satisfied the statutory requirements to apply for an adjustment of status under the CAA such that there is no legally permissible grounds on which to detain him in connection with his removal proceedings.

Nevertheless, Respondents' rationale that Petitioner is subject to mandatory detention under § 1225, lacks merit. Indeed, there is nothing in Respondents' briefing that persuades the Court to deviate from its prior determination that § 1225(b)(2)(A) and its mandatory detention requirement do not apply to noncitizens, like Petitioner, who have been present in the United States for over two years. *See, e.g.*, *Nava Hernandez*, 2025 WL 2996643, at *4 ("[T]he plain text and structure of § 1225 and § 1226 support a determination that § 1225(b)(2)(A)'s provision for mandatory detention does not apply to someone like [Petitioner], who has been residing [in] the United States for more than two years[.]") (quotations and citations omitted). The Court thus again accepts in full its reasoning outlined in *Nava Hernandez* and adopts it here. *See generally id.*; *see also Espinoza Ruiz*, 2025 WL 3294762, at *2 (discussing "the proper application of §§ 1225 and 1226" as articulated by the Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281 (2018)); *see also Env't Prot. Agency*, 597 U.S. at 748 (Gorscuh, J., concurring) ("[W]here an agency claims to have found a previously 'unheralded power,' its assertion generally warrants 'a measure of skepticism.'") (citing *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014)). And as it has found in other similar cases, the Court likewise agrees with Petitioner that in order to protect his due process rights, the government must bear the burden at his § 1226 bond hearing. *See Alfaro Herrera*, 2026 WL 91470, at *10–12.

Accordingly, the Court grants Petitioner's requested relief and orders that Respondents provide Petitioner with a bond hearing pursuant to § 1226(a) within five calendar days of this order, at which time the government will bear the burden of proving that Petitioner is flight risk or a danger to the community such that his continued detention is justified. Because the Court's ruling affords Petitioner the relief he seeks, the Court need not address Petitioner's remaining arguments at this time. *See Loa Caballero*, 2025 WL 2977650, at *8 (declining to rule on petitioner's remaining claims after granting petitioner all relief sought under § 1226(a)); *Guerrero Orellana v. Moniz*, --- F. Supp. 3d ----, 2025 WL 2809996, at *3 (D. Mass. Oct. 3, 2025) (declining to address petitioner's due process and APA arguments after finding in petitioner's favor on statutory claim).

### III.   CONCLUSION

For the reasons discussed above, the Court GRANTS Petitioner's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, ECF No. 1. Respondents are ordered to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within FIVE DAYS of the entry of this order, at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence of dangerousness or flight risk. Respondents are also ordered to file a status report within TWO DAYS of Petitioner's bond hearing to certify compliance. The status report shall state (1) if and when the bond hearing occurred; (2) if bond was granted or denied; (3) if bond was denied, the reasons for the denial; (4) if Petitioner was subjected to any conditions of supervised release; and (5) if any conditions of supervised release were imposed, the extent of those conditions.

DATED this 26th day of January 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge